BEATON v. SEABOARD PORTLAND CEMENT CO. et al. FIDELITY TRUST CO. v. SAME. Appeal of NORTON.

(Circuit Court of Appeals, Second Circuit. January 13, 1914.)

No. 43.

1. CORPORATIONS (§ 560*) — RECEIVERSHIPS — INTERVENTION — MOTIONS — EVIDENCE.

Where, in a receivership suit against a corporation, a bondholder obtained an order to show cause why he should not be permitted to intervene and move to reopen an order confirming a sale of the corporation's property and to set such sale aside, the motion was to be decided upon the affidavits of both parties as well as upon anything relevant in the record of the cause, and the moving party's affidavits were not to be taken as true.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2253–2260, 2262; Dec. Dig. § 560.*]

2. CORPORATIONS (§ 560*)—RECEIVERSHIPS—POWERS OF RECEIVER.

The District Court had power to authorize the receiver of a corporation to borrow money with which to buy a mortgage on the corporation's property prior to a corporate mortgage securing the bonds of the corporation, in order that the sale of the property might be had in that court instead of the state court, and the receiver was bound to hold such mortgage as security for the lenders of such borrowed money until they were repaid.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2253–2260, 2262; Dec. Dig. § 560.*]

3. CORPORATIONS (§ 573*) — REORGANIZATION — SALE OF PROPERTY — SETTING ASIDE.

N., the holder of a bond for $1,000 of a corporation having outstanding bonds amounting to more than $1,200,000 and which was in the hands of a receiver, joined a small syndicate of bondholders whose object was to get control, for their own benefit, of a mortgage on the corporation's property prior to a corporate mortgage securing such bonds, and who did purchase such mortgage. Thereafter a reorganization committee acting for all the bondholders and a committee representing such syndicate met and outlined a plan of reorganization for the equal benefit of both parties, involving the turning over of such mortgage to a new reorganization committee. A new reorganization agreement was executed by six of the seven managers of the syndicate. The reorganization committee arranged to borrow and loan to the receiver enough money to purchase such mortgage, and this was approved by the court and the mortgage assigned to the receiver, the syndicate returning to its subscribers the amounts paid by them except 10 per cent. to cover the expenses of the managers. The new reorganization committee issued a series of notices to all bondholders, which

---

N. received, asking contributions if they expected the property to be bought in for their benefit, but N. did not come into any plan for purchasing the property. The bondholders having failed to so contribute, a new plan was adopted for buying the property for the equal benefit of all bondholders who should come into the plan, and a copy of this plan was sent to every bondholder, including N., and the property was thereafter purchased by the parties to such plan. The sale was confirmed without objection after notice to the bondholders. The corporation had spent $700,000 on the property, and it was sold for $150,000; but unless a large sum was expended it had only the value of agricultural land. *Held*, that there was no such fraud, inadequacy of price, or change in the plan of reorganization outlined at the meeting of the reorganization committee and the committee representing the syndicate as entitled N. to have the confirmation of the sale reopened and the sale set aside, though he claimed that he did not understand the various notices sent him asking him to co-operate in the reorganization.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2293–2296; Dec. Dig. § 573.*]

Appeal from the District Court of the United States for the Southern District of New York.

Bill by George A. Beaton against the Seaboard Portland Cement Company and others for the appointment of a receiver of such company. From an order denying his motion for leave to intervene and move to reopen the order confirming the sale of the company's property and to set such sale aside, Joseph A. Norton appeals. Affirmed.

The Seaboard Portland Cement Company having become financially embarrassed, a suit was brought against it by complainant by the usual creditors' bill. Defendant admitted insolvency and the other allegations of the complaint. A receiver was appointed. The litigation and receivership proceeded through the usual stages. Reorganization committees were formed. On May 25, 1912, a final decree was entered directing that the property be sold under foreclosure of two mortgages. It was so sold, and after a hearing upon notice to bondholders such sale was confirmed July 24, 1912, and the receiver distributed the proceeds of sale on July 26th and 30th. On August 29, 1912, Norton, the holder of a $1,000 bond, applied for leave to intervene and reopen the order of confirmation and to set aside the sale. He had notice of the motion to confirm. From an order denying Norton's motion, this appeal is taken.

The opinion of Ward, Circuit Judge, in the District Court, refusing leave to intervene, was as follows:

Joseph A. Norton, the owner of one $1,000 bond of the Seaboard Portland Cement Company, obtained this order to show cause why he should not be permitted to intervene as a party to the end that he might move to reopen the order confirming the sale of the company's property and that the sale be set aside. The motion has been pressed with such ardor that I will give it full consideration.

An outline of the proceedings is as follows:

March 8, 1910, a bill was filed asking for the appointment of a receiver of the Seaboard Portland Cement Company, the allegations of which were admitted by the company's answer, and William F. Allen was appointed temporary receiver. The company was then unable to meet its current obligations and had an unfinished plant subject to a corporate mortgage securing bonds to the amount of $2,000,000 and subject also to a prior purchase money mortgage of $87,500.

April 15th, a bondholders' protective committee was formed, which committee appointed five persons to act as a reorganization committee.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

May 26th, a reorganization agreement was prepared between all holders of bonds and stock of the Seaboard Portland Cement Company who should come in as parties of the first part, the Reorganization Committee as party of the second part and the Fidelity Trust Company, as depositary, party of the third part. All bondholders were invited to join this plan on equal terms.

June 15th, Norton deposited his bond under this agreement with the Fidelity Trust Company.

July 11th, the court permitted the owners of the Bonneville mortgage of $87,500 which was a prior lien upon nearly all of the real estate covered by the corporate mortgage, to foreclose in the state court.

July 20th, Norton joined a small syndicate of bondholders called the New England Syndicate, whose object was to get control of the Bonneville mortgage for their own benefit solely. The difference between the purposes of the Bondholders' Committee and this New England Syndicate was that the former was for the benefit of all bondholders who would come in, whereas the latter was for the benefit of the subscribers to the syndicate only.

September 24th, the New England Syndicate purchased the Bonneville mortgage.

From this time there began a contest between the New England Syndicate, representing bonds something like $200,000 in amount, and the Bondholders' Committee, representing more than $1,000,000 of bonds.

November 14th, the Bondholders' Committee, finding the Reorganization Committee to be without the necessary funds, circularized all bondholders, inviting them to contribute to the expenses of reorganization.

January 31, 1911, the Reorganization Committee and the Executive Committee of the New England Syndicate met at the Hotel Astor and outlined a plan of reorganization for the equal benefit of both parties. This involved, among other things, the turning over of the Bonneville mortgage by the New England Syndicate to a new reorganization committee.

The preparation of the new agreement was intrusted to Messrs. Noble & Hardy representing the old Reorganization Committee, and Mr. Dewey, representing the New England Syndicate. Norton was present at this meeting.

March 29th, after long negotiations the original reorganization agreement was modified and executed by six of the seven living managers of the New England Syndicate.

The Reorganization Committee arranged to borrow of the Fidelity Trust Company and loan to the receiver enough money to enable him to purchase the Bonneville mortgage. The court approved this as all the bondholders were acting together and the sale of the premises in this way could be had in this court; moreover, it was evident that none but the bondholders would be likely to buy the property.

April 20, William F. Allen was made permanent receiver.

Before this time the court had declined to make the receivership permanent because there had been no real assurance of reorganization.

June 2, the New England Syndicate trustees assigned the Bonneville mortgage to Allen, Receiver.

June 15, they returned to the subscribers to the New England Syndicate, including Norton, ninety per cent. of the amounts paid on their subscriptions, the remaining ten per cent. (which was to cover the expenses of the managers) they said they hoped to get from the Reorganization Committee and forward later.

The new Reorganization Committee was then without the funds necessary to meet its obligations or to enable it to bid at the sale of the property. Accordingly it and the Bondholders' Committee issued a series of notices to all bondholders, which Norton admits he received, explaining the situation and representing the absolute necessity that the bondholders should contribute if they expected the property to be bought in for their benefit. These were dated September 1, 1911, June 7, and 14, 1912. All efforts to carry out any of the proposed agreements having fallen down because of the failure of the bondholders to contribute and the sale of the property having been fixed for June 28, 1912, a meeting of bondholders was held June 20th, at which a new syndicate plan was adopted for buying the property for the equal benefit of all bondholders who should come into the plan. A copy of this plan was sent to

every bondholder, including Norton, with a letter saying, "This supersedes all prior plans proposed which it has been found impracticable to carry out."

In addition to these notices which Norton admits he received, there is proof that a circular of the Bondholders' Committee dated April 4, 1911, was mailed to him, which he does not specifically deny having received. This circular explained in detail exactly what the new Reorganization Committee and the managers of the New England Syndicate proposed to do about the Bonneville mortgage. It also invited the deposit of bonds and stock and a subscription for expenses.

June 28th, the mortgaged premises were sold for $150,000 to the new syndicate of bondholders by a special master appointed by this court.

July 8th, a motion to confirm came on for hearing which was adjourned so that notice might be sent to all bondholders to appear and make objection, if any they had.

July 18th, no one appearing objected to confirmation.

July 24th, the sale was confirmed by the court.

The receiver thereupon distributed the proceeds of sale except a sum of $7,425 reserved for special purposes, of which $6,389.92 remained in his hands when

August 30th, Norton obtained this order to show cause.

[1] Counsel for Norton contends that I must take as true for the purposes of this motion all allegations of fact contained in his affidavits. This is an error. The subject under consideration is an order to show cause and I must decide it on the affidavits of both parties as well as upon anything relevant in the record of the cause.

[2] Next he says that the court was without power to authorize the receiver to borrow money to buy the Bonneville mortgage. He likens this order to an issue of receiver's certificates displacing existing liens in the case of a private corporation. There is no similarity whatever between the two cases. The order the court made displaced no existing lien and created no new one. It was obviously important to protect the corporate mortgage by getting control of the prior lien mortgage. In this way the sale of the premises could be removed from the state court and had in this court. All bondholders were co-operating harmoniously and the order made was for the benefit of every one concerned. Of course, the receiver was bound to hold the mortgage as security for the lenders of the money he borrowed to buy it, until they were repaid.

[3] Finally it is urged that, even if inadequacy of price is not enough to vacate the sale, it will, if accompanied even by a little fraud, be sufficient ground for doing so. But I do not see any fraud. The New England Syndicate agreement, while contemplating foreclosure for the benefit of the syndicate, was made for the protection of the subscribers, and the trustees were authorized to use the mortgage in any way for that purpose. Every one at the meeting at the Hotel Astor, including Norton, saw the advisability of the bondholders acting together and using the Bonneville mortgage for the common benefit. I think it was within the power of the trustees to assign the mortgage. At all events, they clearly acted without fraud.

With respect to inadequacy of price, a public sale properly advertised and fairly conducted, as this one was, is perhaps the best possible test of value. It may be that the Seaboard Company had spent $700,000 at Alsen, but the plant was uncompleted and unless it was finished and in operation had only the value of agricultural land. A large sum of money was needed to complete it, and then its value would depend on whether it proved to be a profit making operation. All the bondholders, including Norton, had notice of sale and an opportunity to object to confirmation, but none of them made any objection.

Substantially the whole purchase price having been distributed, Norton, as owner of one bond for $1,000, asks to have all that has taken place in the last three years undone because the new reorganization agreement differs in some particulars from the plan outlined at the Hotel Astor meeting, of which differences he had no notice. It was plainly contemplated at that meeting that modifications would be made and I think the modifications made entirely reasonable and in furtherance of the object of the meeting.

Norton's real grievance is that, not having contributed one penny to save the property or taken the trouble (to adopt his own account) to understand the notices sent him, he finds his bond almost worthless because he did not come into any plan for purchasing the property. I cannot accept the excuse, if it is an excuse, that he did not understand the notices he received. They were perfectly inconsistent with the foreclosure of the Bonneville mortgage by the trustees of the New England Syndicate for the sole benefit of that syndicate. •

It is also impossible to believe that knowledge of the modifications of the plan outlined at the Hotel Astor meeting would have caused him the least disquietude.

Judicial sales would be of very little value if they were to be vacated for such reasons as given in this case. I think the application entirely without merit, and the motion is denied.

Charles L. Withrow, of New York City, and Spotswood D. Bowers, of Bridgeport, Conn., for appellant Norton.

Morris & Plante, of New York City (Guthrie B. Plante, of New York City, of counsel), for Allen.

Orlando P. Metcalf, of New York City, for Fidelity Trust Co.

Herbert Noble and Charles J. Hardy, both of New York City, for Purchasing Syndicate.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

PER CURIAM. We entirely concur with the reasoning by which Judge Ward reached the conclusion that this bondholder's application should be denied. The order is affirmed, with costs.